The next case is 524-0922, Pickle v. Heather Shank. The appellant is represented by Julie Thompson.  No. It should be inside. O'Connor. I'm sorry, what? That's the hidden bar case. Oh. I'm sorry. That's the wrong document. My apologies. I think the 9 o'clock's already up there. That's why. Yeah. Hold on one second. No, it's okay. All right. Correcting the record. The next case on the docket is 524-0922, Pickle v. Heather Shank. The appellant is Mr. Madrigal. Correct? Correct. All right. You may begin your argument when you're ready, sir. Good morning, Your Honors, Counsel, and may it please the Court. I'm Antonio Madrigal from the Office of the State Appellate Defender. On behalf of the appellant, Ms. Heather Shank. Your Honors, we are here asking this Court to reverse Ms. Shank's conviction and remand her matter so that the jury can properly be instructed to take an adverse inference in regard to Officer Oldham's missing body-worn camera footage. If this Court would indulge me in using this analogy. Jury instructions are like rules of a sport. Just as players, coaches, and referees must follow games of the rules for fairness, a jury must follow the judge's instructions to ensure they apply the law correctly. Without clear instructions, the jury could make mistakes, much like players would without knowing the rules. Both are meant to provide structure and fairness. Without them, the outcome may be flawed. In this case, the issue lies in whether there is some evidence to warrant the giving of Ms. Shank's proposed adverse inference instruction. The answer is yes. There is, there was sufficient evidence to warrant its tendering. Now Ms. Shank's... Do you think the instructions correctly stated the law as it was submitted at the time? Your Honor, we believe that the instruction itself had the... How should I say it? It had the... It tracks the same principle as Illinois' patent jury instructions, civil number 5.01. No, but 5.01 was not argued at the time it was submitted.  It's argued in the brief. Yes. My question is, the judge at the time it was submitted, did the judge have the proper rule of law in front of him? Justice Katz, surely the judge didn't have all the law at hand at the time, but the judge itself, he had an independent duty to make sure he had the correct law. There isn't a comparable criminal instruction as for adverse inference instructions. That's why we referred to, and the State refers to it too in their brief, to instruction civil number 5.01. Here, it was appropriate for the jury to be instructed when the State lost available evidence. There is no equivalent criminal adverse inference instruction, but such instruction serves two purposes. One, to protect the defendants from any uncertainty that might arise from missing evidence, and two, it serves as an incentive for the police to exercise due care in handling their evidence. Now, if we look at instruction 5.01, as we talk in our brief, there are four elements that need to have foundation in order for it to... Counsel, I'm going to ask you the question I often ask. What is our standard of review at the circuit court's room? In the abuse of discretion, Your Honor. Now, if we look at the jury instruction 5.01, there are four elements that need to have some evidence for its tendering, 5.01. One, the first element is that the evidence was under the control of the party and could have been produced by the exercise of reasonable diligence. Two, the evidence was not equally available to an adverse party. And three, a reasonable, prudent person under the same or similar circumstances would have offered the evidence if he believed it would be favorable to him. The argument that you're making now, in the civil world, when you ask for a 5.01 instruction and you have to meet all of those foundational requirements, there was no effort made in this record to do what it is you're arguing. This is kind of a latecomer argument. Yes. So I don't understand how we can apply the factors of 5.01. In this case, when at the time the instruction was tendered, none of the foundational requirements have been even sought after. Yes, Your Honor. We agree with this. But this is why there are jury instruction conferences. But it wasn't brought up. 5.01 wasn't brought up, as you said. But any argument, as we can see back in the record, any argument for the adverse influence instruction was kind of conflated and taken askew by, as we can see in the record, they talked about Arizona v. Youngblood and a whole slew of other cases. But we believe what counsel down below was trying to talk about is the principle of the adverse influence instruction in 5.01, which is that the state had lost missing evidence. And at the very least, we're not talking about a discovery violation. We're talking about, at the very least, the jury should have been informed of this and given the proper instruction in order so they could balance the evidence in front of them. Well, don't you think People v. Tompkins supports that argument you just made that if the jury instruction had been properly tendered, that it should be given under the body cam statute and everything else? But, Your Honor, respectfully, we disagree with that because... You disagree with what I just said? We disagree because trial counsel didn't offer this instruction under the statute you're talking about, the Act, the law enforcement body. No, but the principles of Tompkins that when you have a properly tendered non-IPI that correctly states the law under these kinds of circumstances, at least Tompkins suggests it should be given. Yes, Your Honor, if it accurately states the law. And that was my original question. Do you think the jury instruction that was actually tendered correctly stated the law? There was missing language, Your Honor. But it emulates the same principle as instruction 5.01. It talks about the state had lost available evidence and therefore we should have taken, the jury should have been instructed to take an adverse inference. Now in the brief, when we talk about the elements of 5.01, the state had conceded that it was enough evidence to satisfy elements 2 and 3 of the instruction. What the state is disputing in the brief is elements 1, whether it could have been produced by exercise of reasonable diligence, and elements 4, no reasonable excuse for the failure has been shown. What the state uses as its evidence for exercise of diligence is that Oldham testified that she properly uploaded her body-worn camera footage at the end of her shift. But this does nothing to show her diligence in trying to produce the missing footage. Diligence would have been shown by her recovery steps, such as contacting her IT department and at least trying to recover the missing footage. But she didn't exercise this proper care. It's hard to imagine that with today's technological advancements, the state, when exercising proper care, couldn't have recovered this footage. At best, Oldham showed that she was negligent and reckless in trying to properly recover her own body-worn camera footage. As to element 4, no reasonable excuse, the state admitted during the jury trial that there was a technical glitch and that the footage was not distorted or lost, but they didn't provide anything further as to an explanation for this failure to produce it. The excuse of a technical glitch surely can't be a reasonable excuse. In their brief, the state only points to Oldham's testimony about the uploading process, but what it's telling us is what the state doesn't tell us. They don't tell us that Oldham tried to recover the missing footage. The state's position is that once it's gone, it's gone forever. There's nothing we can do about it. And Ms. Shade paid the price. What about the Youngblood case that says negligence is not enough for a negative inference? How do you distinguish that? We're not talking about, in Youngblood, they're talking about bad faith. There's something towards the language of bad faith. It seems to be like the state purposely did this. We're not talking about that the state purposely destroyed this evidence, lost it forever. We're saying that they were negligent and at least reckless in trying to recover. And we're not talking about... Negligence and reckless are very different. Right. So are you claiming negligence under Youngblood or are you claiming recklessness? We're claiming at least recklessness in trying to recover the missing body-worn camera footage. As a matter of public policy, to let the state agencies get away with losing footage by not properly handling their own body-worn camera footage through the upload process and recovery would be not only contrary to the principles of preservation of evidence, but also to the duties of officers to exercise care when dealing with the body-worn camera footage. This is precisely why the Illinois legislature had created acts, as we talked about, such as the Law Enforcement Officer Worn Camera Act. The absence of explanation in trying to recover the missing footage and the lack of duty of care by all of them is enough evidence to at least give an adverse inference instruction in this case. Now... If you want to give an adverse inference instruction, whose burden is it to show the foundation for the giving of the instruction? Your Honor, I see that my time has expired. It should be the burden on whoever is tender. So in this case, it would have been our burden to show that there was enough evidence. But if we look at the record, what the record shows us is that during the jury instruction, they were more focused on people being Delaney, Arizona, Youngblood, and talking about the language of bad faith and those types of cases. We really didn't have... They didn't have time or... I don't know... We don't know why they didn't tender 5.01. But surely, the judge had an independent duty to say, hey, this instruction is missing some elements. Here's an equivalent, 5.01. How about this? And then surely, down below, Ms. Shank's counsel would have had enough... to show that there was enough evidence to fulfill all four elements of 5.01, Your Honor. And for those reasons, we ask this Court to reverse Ms. Shank's conviction and remand her for the proceedings. Okay, thank you. You'll have a few minutes after Ms. Ray makes her argument. Ms. Ray, for the defendant. Thank you. For the state. I'm sorry. Okay, please support, counsel. I'm Becky Ray, representing the people in this appeal. There's only one issue here, as counsel said, and that is whether the trial court erred in rejecting the defendant's non-IPI adverse inference instruction. It did not, and this Court should affirm. The defendant's tendered non-IPI instruction did not accurately state the law. The tendered instruction the defendant offered said,  If you find that the state has allowed to be destroyed or lost any evidence whose content or quality is an issue, you may infer that the true fact is against the state's interest. End quote. This tendered instruction would have removed from the purview of the jury the assessment of witness credibility. A jury is specifically given this duty of assessing witness credibility per the law and is informed of that duty by the court in its instructions. The jury would have been unable to consider what level of care Oldham did take in uploading and attempting to preserve the video. The jury would have been bound to hold the unavailability of the video against the state, regardless of the reason it was unavailable. The defendant's non-IPI omitted consideration of the reasonable excuse for failure to produce. That's an element that was included in IPI Civil 5.01, upon which his non-IPI, excuse me, her non-IPI was allegedly based. But IPI Civil 5.01 explicitly instructs the trier of fact to consider reasonable excuses for non-production. Yet the defendant did not include that in its instruction. Here, Officer Oldham had a reasonable excuse for not preserving the video. She testified that a technical glitch occurred during the upload. And there's no indication that she could have foreseen that would happen, so there's no way she could have prevented it from happening. Additionally, there's no proof that the body camera video ever existed. The camera was functioning properly at the beginning of her shift. In her testimony, when asked if this was the only video which failed to upload, was, quote, the entire rest of the day, end quote. This statement can have more than one interpretation, as I stated in my brief. As the defendant asserts, it was only that video that failed to upload. However, it could also mean that the video of this incident, plus every video subsequent to that for that duty shift, failed to upload. Her wording, the entire rest of the day, supports that interpretation. It's also entirely possible that, given that neither the video in question, nor video from the entire rest of the day uploaded, that it didn't even record. There's no proof it did in the record. There's no indication that anybody watched that body camera video before Oldham tried to upload it, so we have no idea if it even existed. The Adverse Inference Instruction, which defendants advocate for, is an incentive for police to exercise due care in handling the evidence that's in their possession. That's based on Daniele, which is what their Adverse Inference Instruction was based upon. It said it right at the bottom of the instruction that was tendered. And I noted where in the record it said that in my brief. There's no evidence the recording ever existed, that Oldham didn't know how to use the system or upload videos, or that she didn't exercise the required degree of care in uploading the video. So, due diligence has been shown, or reasonable diligence I think is the correct wording. That has been shown. Oldham testified that, you know, she does this all the time. She checks her camera, and then she uploads at the end of a shift. She testified she did that in this case. Regardless, the amount of care that an officer exercises is irrelevant when a technical malfunction or a glitch occurs. As previously stated, the officer cannot foresee or eliminate a glitch before she even knows it will occur. And after it occurs then, it's too late. That evidence is already gone. The instruction would not have served its purpose thus, because it's undisputed the loss was caused by a technological error and not by any act of the officer or error on the officer's part. Essentially, it was a no-fault situation. But the non-IPI instruction would have foreclosed the jury's consideration that the video, number one, may never have existed, or, number two, that it was lost through a technological issue that was no one's fault. I believe that the Law Enforcement Officer Worn Body Camera Act applies here. That was enacted subsequent to the decision in Daniele. And it states that there must be a preponderance of evidence that the recording was intentionally not captured or destroyed. The defendant didn't allege that here, and he even admitted before this court a few minutes ago that there's no allegations of bad faith here. There's no reasonable belief that the fact finder would have found that that happened anyway on the facts of this case, based on Oldham's testimony that there was a technical glitch. Yet the defendant's tender IPI instruction would not have permitted the jury to even decide whether that intent was present. And for all these reasons, her non-IPI instruction did not accurately state the law. And so the trial court properly denied the giving of that instruction, and there was no abuse of discretion that occurred here. And I would like to, I have quite a bit more to say, but I would like to move on to the defendant's assertion that the court should have corrected his IPI instruction. The court has no duty to do that. The defendant is the one who tendered the instruction, which did not accurately state the law. The trial court has not required sua sponte to give an instruction. That burden is on the party that is requesting that the instruction be tendered. There's only three times when a court is required to sua sponte give an instruction, and that is to instruct the jury on the elements. We have no indication that that did not occur here. And in reading the jury instructions, it absolutely did occur. They did, the court did instruct the jury on the elements. The second time is when it deals with the presumption of innocence. That instruction was given. And the third is on the question of burden of proof. Again, that instruction was given. The adverse inference instruction does not fall under any of those three categories. So the court was not, on its own motion, required to give the adverse inference instruction or correct defendant's tendered instruction. Excuse me. The sole obligation is corollary on the burden of proof instruction to give kind of the opposite. They have the burden of proof, but if they've allowed evidence to be lost, you get a negative inference. I'm not so sure that goes as much to the burden of proof as it would to credibility of the witness, Your Honor. And that is in the jury's purview to decide. It's their duty, and they're instructed that. And they were given that duty here. Right, so the credibility instruction was given to the jury. Correct. The court has a duty to ensure that the jury is fully and fairly instructed. And if the essence of defendant's tendered but refused instruction is covered by other jury instructions, then there's no harm, no foul. And it was covered. IPI 1.02 covers that. I had that elsewhere in my brief, but it was covered by all the other jury instructions. They received the information that they should have received to make this decision. And there was no abuse of discretion here. And I see I'm out of time. I'd just like to, or almost out of time, I'd like to finish up. The trial court has no duty to rewrite defendant's instruction to correct his error. And I can cite to the court some cases for that. People v. Cobb, 186, LAC 3rd, 898. Pinpoint sites 910 and 914. People v. Bernard, 104, Illinois 2nd, 218. Pinpoint site 232. This was an appeal from the 5th District, of Slim County in the 5th District. As well as people v. Underwood, 72, Illinois 2nd, 124. Pinpoint 129. And a 2025 case, which was just persuasive. People v. Millage, 2025, ILL Act 4th, 240461, paragraph 22. Since no abuse of discretion here, occurred here, this court should affirm the defendant's conviction for all the reasons argued here today and in the state's brief. Thank you very much. Thank you, Mr. Governor. Thank you very much. No, thank you. Thank you very much. Thank you. Mr. Madrigal. Yes, Your Honor. Now, just a few points I want to touch upon, what the state said. The state argued that the essence of the adverse inference instruction was already covered in Criminal Instruction 1.02. This court should reject this argument. A simple reading of the Instruction 1.02 shows us that the instruction pertains to the duties of the jury on how they are the ultimate judges in balancing the reliability of the evidence. The adverse inference instruction deals with the state's failure to produce evidence within its control. Both instructions are very different. And I would also point out for this court that the 3rd District Appellate Court has said, and people be black with, that there is no comparable criminal instruction for the adverse inference instruction. Now, the state also said that no video ever existed because Officer Oldham said this during her testimony. But during the jury instruction conference, what the record shows us is that the prosecutor actually said it was just a technical glitch and has no explanation as to any, if availability or if it was permanently gone or destroyed. What it's telling is that the state talked about just the upload process and that was Officer Oldham's duty. It's just to ensure the upload process. It was working properly during the upload process. But we need to know the recovery steps. There was no testimony as to, I went to IT and tried to recover it. I talked to my supervisor. What should I do? There was nothing of the mention in the record. The state. If there's no mention in the record, the instruction that was tendered says, if you find that the state has allowed to be destroyed or lost any evidence, allowed to be destroyed or lost, if there's no evidence in the record as to what happened, how does this instruction apply to be given as a non-IPI? As a non-IPI, this is why there are jury instruction conferences, Your Honor, as they could have been hashed out during the conference. There could have been more case law, more argument. I'm not understanding. There could have been more argument as to why the backing, there should have been more backing on the tendered instruction or withdrawn and then given another instruction more similar to 5.01, but there wasn't a sort of argument down below. Does this mean that you're placing the burden on the court to figure out the errors of counts? We're not saying it was on the court, Your Honor. We're saying that there was an independent duty, at least for the judge, to look at the instruction and say, surely there's missing elements there. Let's look at this or let's look at that, 5.01. And then there could have been a more thorough argument regarding this instruction, but there wasn't such thing in the lower court, Your Honor. That's why we had to raise this argument now. And for those reasons, we ask this court to remand in this manner. Reverse Ms. Schenk to mention and remand in this manner for the proceedings. Thank you. All right. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement and we'll issue an order of recourse. Appreciate it.